```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
ROBERT L. REBELE,

                Plaintiff,

       -against-                    MEMORANDUM AND ORDER
                                    09-CV-2441 (JS)(AKT)
JOHN E. POTTER, POST MASTER
GENERAL, UNITED STATES POSTAL
SERVICE,

                Defendant.
----------------------------------X
APPEARANCES:
For Plaintiff:      Kyle T. Pulis, Esq.
                    Scott M. Mishkin, Esq.
                    Scott Michael Mishkin PC
                    One Suffolk Square, Suite 240
                    Islandia, NY 11749

For Defendant:      Robert W. Schumacher, Esq.
                    U.S. Attorney's Office
                    Eastern District of New York
                    610 Federal Plaza
                    Central Islip, NY 11722
```

SEYBERT, District Judge:

Pending before the Court is a motion for summary judgment pursuant to Fed. R. Civ. P. 56 filed by John E. Potter, Post Master General of the United States Postal Service ("Defendant" or "USPS") seeking dismissal of every claim contained within the Complaint filed by Robert Rebele ("Rebele" or "Plaintiff"). Plaintiff brought this action against USPS, his employer, alleging (1) retaliation for his participation in Equal Employment Opportunity ("EEO") activities in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") and (2) constructive discharge from his position in the Time and Attendance

Collection System ("TACS") Department at USPS. For the reasons set forth below, Defendant's motion is GRANTED.

BACKGROUND

Plaintiff is currently employed by the USPS in its Vehicle Maintenance Department. Plaintiff's Local Rule 56.1 Statement ("Pl.'s Stmt.") ¶ 2. During the time period encompassed by the Complaint, Plaintiff served as a clerk for TACS, another department of the USPS, where, beginning in October 2001, he worked under the supervision of one Nancy Quiney ("Quiney"). Answer ¶ 8. Here, Plaintiff worked for almost a decade, receiving a number of awards for his competent job performance. Pl.'s Stmt, ¶ 25.

In September 2006, Plaintiff interviewed for a "specialist" position within the TACS Department for the Long Island District. Id. To his dismay, however, another TACS employee, Joanne Schnapp ("Joanne"), was awarded the position of specialist over Plaintiff. Id. ¶ 26. As it happens, Joanne is the daughter of Plaintiff's then supervisor, Quiney. Id. Vexed by the way the position had been filled, Plaintiff registered a complaint with Quiney about the situation, offering his view that perhaps there were other TACS employees with deeper experience and better qualifications than Joanne. Id. ¶ 29. About one month after this conversation between the two, Plaintiff observed a notice from Quiney which purported to "require" that Plaintiff work on the Thanksgiving holiday (something that had never before been required

2

of Plaintiff). Id. ¶ 30. On November 24, 2006, Joanne sent an e-mail to Plaintiff informing him that his access would be cut off to the "Tour Office", to which Plaintiff required access in order to fulfil his employment duties. Id. ¶ 31. Although Plaintiff seldom took advantage of his sick leave allowances and always hewed closely to his work schedule, Joanne sent another e-mail to Plaintiff promising "corrective action" and admonishing him that he should be more regular in his attendance. Id. ¶ 32. Finally, on January 27, 2007, Joanne told Plaintiff that she was planning on changing his start time. Id. ¶ 34.

In response to these developments, on February 4, 2007, Plaintiff first scheduled a meeting with an EEO counselor, which was docketed as Agency No. 4A-117-0043-07. Decl. of Anthony Merlino ("Merlino Decl.") ¶ 5. In this initial contact with the EEO, Plaintiff's sole ground of complaint was that Quiney discriminated against him--on the basis of a purported disability, not of his gender. Id. ¶ 6. Although the USPS informed Plaintiff of his right to file a formal complaint, Plaintiff declined. Id.

On October 6, 2007, Plaintiff once again set up a meeting with an EEO counselor, this time docketed as Agency No. 4A-117-0007-08. Merlino Decl. ¶ 8. In this meeting, Plaintiff complained that he was subjected to retaliation in that: (1) his request for leave was denied on September 4, 2007; (2) his access to the TACS program on his computer was impeded and his access to the eRMS

3

application was taken away altogether; and (3) he had not been paid for pay period 19, week 1.  Merlino Decl., Ex. C.  After the USPS issued a Notice of Right to File a Formal EEO Complaint, Plaintiff filed a formal complaint on November 28, 2007, which was docketed as Agency No. 4A-117-0007-08, and it was accepted for investigation into the grounds of retaliation enumerated supra.  Merlino Decl. ¶ 11.  On  May 16, 2008, the USPS issued a Final Agency Decision, finding no retaliation.  Merlino Decl. ¶ 13.  The Office of Federal Operations affirmed that decision in full on March 13, 2009.  Id. ¶ 14.

For the third and final time, on October 3, 2008, Plaintiff arranged for a meeting with another EEO counselor, docketed as Agency No. 4A-117-0002-09.  Merlino Decl. ¶ 15.  This time, Plaintiff alleged that he was retaliated against when a new TACS employee called Biji Jacob ("Biji") came along with Joanne to the "datasite" where Plaintiff worked to "cross train."  Merlino Decl., Ex. J.  Biji "gave [Plaintiff] a service talk on Aviation Mail Security and asked [him] to sign it" which showed that "she was indeed [his] supervisor at the time."  Id.  According to his complaint, Biji's arrival with Joanne somehow further stymied Plaintiff's ability to "cover the TACS specialist position."  Id.  Plaintiff alleged that Joanne and Quiney agreed on this development in order to punish Plaintiff for his EEO complaints and to make him "feel unimportant, unneeded, and . . . like less of a valued

4

employee." Id. On December 27, 2008, the USPS issued a Notice of Right to File a Formal EEO Complaint in connection with this matter, but Plaintiff did not file one until January 6, 2009. Merlino Decl. ¶ 17. Accordingly, on January 15, 2009, the USPS dismissed this iteration of Plaintiff's complaint for its untimeliness. Id. ¶ 18.

After exhausting his administrative remedies, Plaintiff filed the Complaint in this Court on June 9, 2009.

## DISCUSSION

### I. Rule 56: Standard of Review

A district court may properly grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997).

"In assessing the record to determine whether there is a genuine issue to be tried . . . the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997).

Mere conclusory allegations, speculation or conjecture will not avail a party opposing summary judgment, see Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996), and "[f]actual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986) (citing 10A Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2725, at 93-95 (1983)).

In discrimination cases,

> "trial court[s] must be cautious about granting summary judgment to an employer when . . . its intent is at issue. . . . Because writings directly supporting a claim of intentional discrimination are rarely, if ever, found among an employer's corporate papers, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination."

Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1224 (2d Cir. 1994). Thus, a court should not grant an employer's motion for summary judgment unless "the evidence of discriminatory intent is so slight that no rational jury could find in [the P]laintiff's favor." Id. at 1226. Be that as it may, this deferential standard should not be applied so as to foreclose the possibility of summary judgment in all employment discrimination cases. See Weinstock v. Columbia Univ., 224 F.3d 33, 41-42 (2d Cir. 2000) ("the 'impression that summary judgment is unavailable to defendants in discrimination cases is unsupportable.'" (quoting McLee v. Chrysler Corp., 38 F.3d 67, 68 (2d Cir. 1994)).

A.  <u>Plaintiff's Title VII Retaliation Claim</u>

Plaintiff's retaliation claim is analyzed under the familiar <u>McDonnell Douglas</u> framework, since the Plaintiff presents no direct evidence of retaliation. <u>See</u>, <u>e.g.</u>, <u>Gorzynski v. Jetblue Airways Corp.</u>, 596 F.3d 93, 106 (2d Cir. 2010). Within this framework, the burden lies initially with the Plaintiff to make out a <u>prima facie</u> case for his retaliation claim. <u>See</u> <u>Patterson v. County of Oneida</u>, 375 F.3d 206, 221 (2d Cir. 2004).

To establish retaliation under Title VII, Plaintiff must prove that: (1) he engaged in an activity protected under the anti-discrimination statutes; (2) the employer was aware of the Plaintiff's protected activity; (3) the employer took a materially adverse action against the Plaintiff; and (4) a causal connection existed between Plaintiff's protected activity and the adverse action taken by the employer. <u>See</u>, <u>e.g.</u>, <u>Henry v. Wyeth Pharmaceuticals, Inc.</u>, 616 F.3d 134, 146 (2d Cir. 2010). With respect to the first prong of a retaliation claim, Title VII prohibits retaliation where "[an individual] has opposed <u>any practice made an unlawful employment practice by [Title VII]</u>, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]" (emphasis added). 42 U.S.C. § 2000e-3. Title VII proscribes discrimination only on the basis of an "individual's <u>race, color, religion, sex, or national origin</u>" (emphasis added).

7

42 U.S.C.2000e-2(a)(1). Discrimination on the basis of disability, therefore, does not fall with the ambit of Title VII; for this reason, EEO activity based on alleged discrimination on the basis of a disability cannot constitute a "protected activity" for purposes of a Title VII retaliation claim. See Davis v. Oyter Bay-East, 2006 WL 657038, *7, n.9, *13 (E.D.N.Y. 2006), aff'd 220 Fed Appx. 59 (2d Cir. 2007); see also Muszak v. Sears, 63 F. Supp. 2d 292, 300 (W.D.N.Y. 1999).

Here, Plaintiff argues that, although his complaints to EEO counselors admittedly never sounded in any of the classes protected by Title VII (race, color, religion, sex, or national origin), he nevertheless satisfies the first element of his prima facie case because at the time he made the complaint on which his lawsuit is based in February 2007, he had a "good faith, reasonable belief" that the USPS had violated Title VII, namely the provision protecting against discrimination on the basis of gender. Pl.'s Mem., p. 8. See, e.g., Galdieri-Ambrosini v. National Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir. 1998) citing Reed v. A.W. Lawrence, & Co., 95 F.3d. 1170, 1178 (2d Cir. 1996). When a plaintiff attempts to establish the first prong of his retaliation claim by showing a good faith, reasonable belief in Title VII discrimination, the standard is the totality of the circumstances. Galdieri-Ambrosini, 136 F.3d at 292. Relatedly, "as to the second element, implicit in the requirement that the employer have been

8

aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII." Id.

In this case, the record could not be more bereft of even the slightest "semblance of gender-oriented motivation in the events." Id. at 292. Incredibly, Plaintiff does not contest this conclusion. Quite the reverse: it is he who declares it a material statement of fact that Joanne won the specialist position, not because she was a female and he a male, but <u>because she was the daughter of his supervisor, Quiney</u>. See Pl.'s Stmt. ¶¶ 26-28. Nowhere in Plaintiff's Local Rule 56.1 Statement does he allege that Joanne bested him for the specialist position due to her gender. More to the point, neither Plaintiff's Complaint, nor his EEO filings even so much as mention gender-based violations of Title VII. See Compl.; see also Merlino Decl., Exs. A, C, E, L. Indeed, the strongest fact that Plaintiff can adduce in proof of some semblance of gender discrimination is that it was a female who happened to send the January 5, 2007 "threatening" e-mail. Pl.'s Mem., p. 9. Of course, if it were the case that any and every unpleasant or threatening work-related e-mail sent from one gender to another were enough to create a "good faith, reasonable belief" in a Title VII violation, the statute--and the concept of gender discrimination itself--would lose all meaning. Nor does one

9

"threatening" female-to-male e-mail make a reasonable Title VII allegation. That it was a female rather than male supervisor who advised Plaintiff he would work on the Thanksgiving holiday is similarly without Title VII significance. For countless economic, administrative and very practical reasons, the law could not be otherwise.

If the evidence marshaled by Plaintiff does admit of a "good faith, reasonable belief" in some form of untoward employment activity, it is nepotism. Pernicious though this employment practice is, it does not constitute a form of discrimination under Title VII. See 42 U.S.C.2000e-2(a)(1). In this connection, it is illustrative to compare Plaintiff's suit with the operative facts in Galdieri-Ambrosini. There, the plaintiff, as in this case, advanced the argument that, although she may have suffered no discrimination sounding in Title VII, she nevertheless had a "good faith, reasonable belief" that she had suffered such discrimination when she engaged in EEO activity, thereby satisfying the first prong of her retaliation claim. Galdieri-Ambrosini, 136 F.3d at 290. Before reaching its decision, the court noted that it accepted as true the allegations that: her supervisor, a male, required her to perform menial tasks; and more tedious, arduous work was demanded of her than of other male employees. Id. Notwithstanding these facts, the court held that the events the plaintiff described were, as a matter of law, insufficient to

"threatening" female-to-male e-mail make a reasonable Title VII allegation. That it was a female rather than male supervisor who advised Plaintiff he would work on the Thanksgiving holiday is similarly without Title VII significance. For countless economic, administrative and very practical reasons, the law could not be otherwise.

If the evidence marshaled by Plaintiff does admit of a "good faith, reasonable belief" in some form of untoward employment activity, it is nepotism. Pernicious though this employment practice is, it does not constitute a form of discrimination under Title VII. See 42 U.S.C.2000e-2(a)(1). In this connection, it is illustrative to compare Plaintiff's suit with the operative facts in Galdieri-Ambrosini. There, the plaintiff, as in this case, advanced the argument that, although she may have suffered no discrimination sounding in Title VII, she nevertheless had a "good faith, reasonable belief" that she had suffered such discrimination when she engaged in EEO activity, thereby satisfying the first prong of her retaliation claim. Galdieri-Ambrosini, 136 F.3d at 290. Before reaching its decision, the court noted that it accepted as true the allegations that: her supervisor, a male, required her to perform menial tasks; and more tedious, arduous work was demanded of her than of other male employees. Id. Notwithstanding these facts, the court held that the events the plaintiff described were, as a matter of law, insufficient to

permit an inference that either her working conditions or the decision to discharge her were based in any way on her gender; therefore, it could not be said that the plaintiff had a "good faith, reasonable belief" that she had suffered a Title VII violation.  Id.  If anything, the facts alleged in Galdieri-Ambrosini betoken gender-based discrimination much more strongly than the facts that Plaintiff relies on to withstand summary judgment.  Where the plaintiff in Galdieri-Ambronsini (unsuccessfully) relied on a slew of detailed examples touching on the nature of her work as compared with the work of her male colleagues, Plaintiff merely offers the facts that he was passed over for the TACS specialist position by a female (Joanne), in a decision made by a female (Quiney), and that Joanne then sent him e-mails allegedly degrading him.  No other proofs of gender-based discrimination are offered.  See Pl.'s Mem., p. 9.  A fortiori, then, Plaintiff's cannot amount to facts sufficient to support a reasonable, good faith belief that he had been discriminated against on the basis of his male gender.  More fundamentally, the Plaintiff himself maintains in his material statement of facts that Joanne won the specialist position not because she and supervisor Quiney were females but because Joanne was Quiney's daughter.  See Pl.'s Stmt, ¶¶ 26-28.  If Plaintiff believed this, he could not simultaneously believe reasonably and in good faith that the misfortune that befell him was due to gender bias per se.

Accordingly, having found that Plaintiff cannot establish a prima facie case of retaliation under the familiar McDonnell Douglas burden-shifting framework, Defendant's motion is GRANTED.

B. Plaintiff's Constructive Discharge Claim

Plaintiff alleges that the retaliatory conduct of which he complains in the claim dismissed supra, eventually led to his constructive discharge. Compl. ¶ 206. In his opposition brief, Plaintiff writes: "In Agency No. 4A-117-0002-09, Plaintiff alleged that Defendant's ongoing and continuous retaliatory conduct forced Plaintiff to constructively discharge from his TACS position to his current position in the Vehicle Maintenance Department." Pl.'s Mem., p. 14. Thus, by Plaintiff's own argument, his constructive discharge claim stands or falls by his Title VII retaliation claim. (He furthermore neglects to argue in his brief that, should his retaliation claim fail, his constructive discharge claim would remain.) As that claim was dismissed supra for Plaintiff's failure to establish a prima facie case, so must this claim be dismissed. "[W]hen dealing with a claim for constructive discharge resulting from retaliation, actual retaliation is a necessary predicate." Johnson v. Potter, 2009 WL 2180354, at *17 (W.D.N.Y. July 22, 2009) citing Downey v. Isaac, 622 F. Supp. 1125, 1133 (D. D.C. 1985) ("In sum, in a retaliatory constructive discharge case, a plaintiff must show that he/she was retaliated against because of his/her E.E.O. activity") aff'd without opinion 794 F.2d 753 (D.C. Cir. 1986).

Accordingly, Defendant's motion is GRANTED.

## CONCLUSION

For the foregoing reasons, with respect to all of Plaintiff's claims, the Court GRANTS Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Clerk of the Court is directed to terminate all pending motions and mark this matter CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: May   24  , 2010
       Central Islip, New York